Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8250 | **DATE** | 9/28/2004 |
| **CASE TITLE** | MIKE SHALES, et al vs. ASPHALT MAINTENANCE, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM AND ORDER: Defendant Johnson's Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6) [doc. no. 18-1] is granted. Defendant Johnson is dismissed from the proceedings. Defendant's request for reasonable costs and attorney's fees is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 2 8 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 30 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| CG courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MIKE SHALES; JOHN BRYAN, SR; AL )
OROSZ; JOSEPH MANN; TOBY KOTH; )
GORDON ANDERSON; FOX VALLEY )
LABORERS' HEALTH AND WELFARE )
FUND; DAN BREJC; and FOX VALLEY )
LABORERS' PENSION FUND, )
              )
              )  Judge Ronald A. Guzmán
    Plaintiffs,      )
              )
              )  03 C 8250
  v.           )
              )
ASPHALT MAINTENANCE, INC., d/b/a )
JOHNSON BLACKTOP, INC.; and DAN )
JOHNSON, individually, )
              )
    Defendants.     )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mike Shales, John Bryan, Sr., Al Orosz, Joseph Mann, Toby Koth, and Gordon Anderson as Trustees of The Fox Valley Laborers' Health and Welfare Fund and, including Dan Brejc, as Trustees of The Fox Valley Laborers' Pension Fund (collectively "the Funds") have sued defendants Asphalt Maintenance, Inc., d/b/a Johnson Blacktop, Inc. ("Asphalt"), and Dan Johnson, individually, for failure to properly deduct, remit, and report wages, or to make necessary contributions to the Funds. Count I alleges violations of the Employment Retirement Income Security Act, 29 U.S.C. § 1145 ("ERISA") and the Labor Management Relations Act, 29 U.S.C. §

185 ("LMRA"). Count II alleges a violation of the Illinois Wage Payment and Collection Act, 820 ILL. COMP. STAT. § 115/1 *et seq.* ("IWPCA"), and Count III alleges the common law tort of conversion.

On March 30, 2004, a default judgment was granted against defendant Asphalt. Defendant Johnson now brings this motion to dismiss all three counts of the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing that he cannot be personally liable under Count I, and Counts II and III are preempted by the LMRA.[1] For the reasons provided in this Memorandum Opinion and Order, the motion is granted.

## FACTS

The following facts from the complaint are assumed to be true for the purposes of this motion to dismiss. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Johnson is the owner and an officer of Asphalt. (Compl. ¶ 3.) The Construction and General Laborers' District Council of Chicago and Vicinity ("District Council"), Johnson, and Asphalt have been parties to successive collective bargaining agreements ("CBA"), which obligate Defendants to make monthly contributions to the Funds on behalf of their employees covered by the CBA for health, welfare, pension benefits and for deductions and contributions to various affiliated organizations. (*Id.* ¶¶ 1, 6.) The CBA also requires Defendants to submit monthly remittance reports in which Asphalt was to identify the

---

[1] Johnson also argues these counts are preempted by ERISA and that the Funds lack standing to sue. The Court need not address these arguments, however, because preemption under the LMRA is dispositive of the claims.

2

employees covered under the CBA and the amount of contributions to be remitted to the Funds and the affiliated organizations on behalf of each employee. (*Id.* ¶ 6.)

On November 18, 2003, Plaintiffs filed a three-count Complaint alleging that Defendants had failed to correctly report and pay contributions owed to the Funds and the affiliated organizations from April 1, 1998 through the present. (*Id.* ¶¶ 10-13.) Count I of the Complaint alleges that Defendants' delinquency in reporting and paying these contributions violates ERISA, the LMRA, and the CBA. (*Id.* ¶¶ 11-16.) Count II alleges that Johnson failed to properly withhold employee's wages for payment of union dues and failed to remit those wages to the Funds, violating the IWPCA. (*Id.* ¶¶ 42-49.) Count III alleges Johnson failed to remit wages to the Funds and therefore wrongfully converted their property. (*Id.* ¶¶ 105-08.)

## DISCUSSION

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to examine the adequacy of the complaint, not to decide the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, the Court must construe all reasonable inferences drawn from the facts of the complaint in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the complaint must be taken as true. *See Roots P'ship v. Land's End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992). The allegations of a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of its claim entitling it to relief. *Conley*, 355 U.S. at 45-46; *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).

## I. Count I

Johnson first argues that Count I should be dismissed because he cannot be held personally liable for ERISA and LMRA violations committed by the corporate defendant. In their response, Plaintiffs concede that only Counts II and III are directed against Johnson personally. (Pls.' Resp. Mot. Dismiss at 2.) Therefore, to the extent that Count I may allege a claim against Johnson, it is dismissed.

## II. Counts II and III

Johnson next contends that Counts II and III should be dismissed because the LMRA preempts Plaintiffs' state claims of an IWPCA violation and the tort of conversion. The Supremacy Clause of Article VI of the United States Constitution grants Congress the power to preempt state law. *Kohl's Food Stores, Inc. v. Hyland*, 32 F.3d 1075, 1077 (7th Cir. 1994). In enacting § 301 of the LMRA, which authorizes suits for breach of collective bargaining agreements between employers and unions, Congress exercised this power. *Tifft v. Commonwealth Edison*, No. 02 C 4110, 2003 WL 187409, at *3 (N.D. Ill. Jan. 27, 2003). Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

This section confers federal court jurisdiction over disputes that arise out of collective bargaining agreements and also "'authorizes federal courts to fashion a body of federal law for the

enforcement of these agreements.'" *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)). To ensure the uniform interpretation of collective bargaining agreements, "'issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy.'" *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962)). Section 301 thus preempts a state law claim where the claim "is 'founded directly on rights created by collective bargaining agreements' . . . and when the resolution of a state law claim 'depends on the meaning of, or requires the interpretation of, a collective bargaining agreement.'" *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 934 (N.D. Ill. 2003) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) and *Loewen Group Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir. 1995)); *see also Allis-Chalmers*, 471 U.S. at 210 ("A state rule that purports to define the meaning or scope of a term in a contract suit . . . is preempted by federal labor law.").

However, "not every dispute . . . tangentially involving a provision of a collective-bargaining agreement . . . is pre-empted by § 301 or other provisions of the federal labor law." *Allis-Chalmers*, 471 U.S. at 211. For example, "if a dispute merely requires reference to, or consultation of," the CBA, the preemptive force of § 301 will not be triggered. *See Lopez v. Smurfit-Stone Container Co.*, No. 02 C 7347, 2003 WL 297533, *2 (N.D. Ill. Feb. 10, 2003); *see also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished . . . ."). Moreover, in a case where a "particular contractual provision is so clear as to preclude all possible dispute over its meaning," there may be no need to interpret the CBA. *Nat'l Metalcrafters v.*

5

*McNeil,* 784 F.2d 817, 824 (7th Cir. 1986). Whether or not a state law claim involves an interpretation of the CBA, and thus is preempted, "requires a case-by-case factual analysis." *In re Bentz Metal Prods. Co.,* 253 F.3d 283, 285 (7th Cir. 2001).

### A. IWPCA

The Court first addresses the preemptive effect of the LMRA on Plaintiffs' claim under the IWPCA, which provides: "All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which wages were earned." 820 ILL. COMP. STAT. § 115/4. In Count II, Plaintiffs allege that Johnson violated the IWPCA by not failing to properly withhold and remit moneys from employees' wages for payment of union dues. (Compl. ¶¶ 43-49.) Johnson argues that resolution of Plaintiffs' IWPCA claim will involve interpretation of the CBA. Plaintiffs respond that their allegations of IWPCA violations do not call for the interpretation of the CBA but only require the Court to consult the clear, straightforward and unambiguous language of the CBA.

The Court agrees with Johnson that Plaintiffs' claim under the IWCPA requires an interpretation of the CBA and thus is preempted by the LMRA. As the Supreme Court held in *Allis-Chalmers*:

> [Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Allis-Chalmers*, 471 U.S. at 211; *see also Nat'l Metalcrafters,* 784 F.2d at 824 (holding that the IWCPA only obligates the employer to honor his contract, and to determine whether he has done so "requires interpreting the contract").

Plaintiffs' claims are predicated on the rights created by the CBA and depend on the meaning of, or require an interpretation of, the CBA to determine whether Johnson should have paid money to the Funds, how much he should have paid, and to whom he should have made payment. Exactly which parties entered into this labor agreement and what consequences were meant to flow from a breach of this agreement also center around the CBA. *See Nat'l Metalcrafters,* 784 F.2d at 823 ("[A] determination that a contract is so clear as to make a breach willful . . . *is* an interpretation of the contract.") (emphasis in original). Therefore, Plaintiffs' state claim for alleged violations of the IWPCA is preempted by the LMRA, and Count II is dismissed with prejudice as to Johnson.

### B. Conversion

The Court next addresses the preemptive effect of the LMRA on Plaintiffs' state tort claim of conversion. In deciding whether a state tort action is preempted by the LMRA, the Court must first examine the elements of that claim and determine whether they are inextricably intertwined with the interpretation of the CBA. *See Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 570 & n. 6 (7th Cir. 1989). If the claims are such that state tort law purports to define the meaning of the contractual relationship, then the tort claim is preempted by the LMRA. *See In re Amoco Petroleum Additives Co.,* 964 F.2d 706, 709-10 (7th Cir. 1992) (stating that claims of invasion of privacy in the workplace and intentional infliction of emotional distress are preempted by § 301 of the LMRA); *Douglas,* 877 F.2d at 570 n.6, 572 (holding that the plaintiff's claim of intentional infliction of

emotional distress was preempted by § 301 of the LMRA); *Tifft*, 2003 WL 187409, at *4-5 (stating that a claim for wrongful termination was preempted by § 301 of the LMRA because "the Court would need to substantially depend upon provisions of the CBA when engaging in an analysis of Plaintiffs' state law claims").

In order to establish a claim of conversion, a plaintiff must prove that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Johnson v. Grossinger Motorcorp, Inc.*, 753 N.E.2d 431, 438 (Ill. App. Ct. 2001). The parties cite no cases, and the court has found none, dealing with § 301 preemption of a conversion claim. However, *Leu v. Norfolk & Western Railway Co.*, 820 F.2d 825 (7th Cir. 1987), is instructive.

The issue in *Leu* was whether state tort claims of conversion and fraud were preempted by the Railway Labor Act ("RLA"), which is analogous to the LMRA. *Id.* at 826, 828; *see Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994) (holding that the RLA preemption standard "is virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA"). The plaintiffs in *Leu* argued that their state law fraud and conversion claims were not preempted by the RLA because the railroad's obligation to pay the medical expenses of its injured employees did not arise from any provision found in the collective bargaining agreement, but through course and practice. *Id.* The court disagreed, reasoning that the question of whether the responsibility to pay exists at all requires an interpretation of the CBA. *Id.* The court then relied on *Allis-Chalmers* to explain that "[t]he key inquiry . . . is 'whether evaluation of the tort claim is

inextricably intertwined with consideration of the terms of the labor contract.'" *Id.* at 830 (quoting *Allis-Chalmers*, 471 U.S. at 213). *Leu* concluded that the action of conversion is "firmly rooted" in the parties' contractual expectations, *i.e.*, whether the railroad had a duty to pay the plaintiff's medical expenses and whether or not failing to do so amounted to conversion. *Id.* The court therefore dismissed the state tort claims of conversion and fraud, finding that they were preempted. *Id.* at 831.

In this case, Plaintiffs' conversion claim alleges that Johnson had a duty to properly withhold, remit, and report wages and make payments to the Funds, and that by not doing so, Johnson has converted those funds rightfully due the plaintiffs for his own personal benefit. However, based on the reasoning set forth in *Leu*, Plaintiffs' rights and Johnson's duties arose directly from the CBA. In order to evaluate what those rights and duties were, the Court will necessarily have to interpret the CBA. As a result, the state tort claim for conversion is inextricably intertwined with the terms of the CBA, and the claim is preempted by the LMRA. Plaintiffs' claim of conversion as to Johnson is therefore dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Johnson's Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6) [doc. no. 18-1] is granted. Defendant Johnson is dismissed from the proceedings. Defendant's request for reasonable costs and attorney's fees is denied.

**SO ORDERED.**  ENTERED: 9/28/04

HON. RONALD A. GUZMAN
**United States Judge**